NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN CORIGLIANO, | : |
| Plaintiff, | : Civil Action No. 13-4180 (SDW) (MCA) |
| v. | : **OPINION** |
| CLASSIC MOTOR INC. AND FADI ELIAS, | : |
| Defendants. | : |

**WIGENTON, United States District Judge**

This matter comes before this Court on the motion of Defendants Classic Motor, Inc. and Fadi Elias (collectively, "Defendants") to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) or in the alternative, to transfer venue. (Dkt. No. 6). Plaintiff John Corigliano ("Corigliano"), opposes this motion. (Dkt. No. 10). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. After considering the papers submitted in connection with this motion, for the reasons set forth herein, and for good cause shown, this Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction .

## I. BACKGROUND

Plaintiff is a resident of Fort Lee, New Jersey. (Compl. at ¶ 1). Corigliano is a consumer purchaser of rare cars, including a 1995 Rolls Royce Corniche Convertible ("the Car") he purchased from Defendants. (Id. at ¶¶ 8-9). Defendant Classic Motor, Inc. ("Classic Motor") is

a California corporation in the business of selling rare cars.  (Id. at ¶ 7).  Defendant Fadi Elias ("Elias") is the owner of Classic Motor, Inc.  (Id. at ¶ 3).

The subject matter of this lawsuit involves the Defendants' sale of the Car to the Plaintiff in 2011.  The parties have a preexisting relationship stemming from Corigliano's previous purchase of a different car from Classic Motor in 2010.  In February 2011, Defendant Elias contacted Corigliano, whom he considered an "expert" in the field of Rolls Royces, to discuss the pros and cons of selling the Car "as is."  (Certification of Fadi Elias ("Elias First Cert."), at ¶ 27-28).  Ultimately, Plaintiff expressed an interest in buying the Car.  (Id. at ¶ 28-29).  At some point, Elias sent photos of the Car to Corigliano via the internet.  (Id. at ¶ 28; Certification of John Corigliano ("Corigliano Cert."), at ¶ 7).  Ultimately, Plaintiff sent wire transfers to Classic Motors in California for the purchase of the Car.  (Corigliano Cert. at ¶ 11; Elias First Cert. at ¶ 31).

While the parties dispute whether Corigliano travelled to California to see the Car in April, Corigliano admits that he went to California in June 2011, at which time he signed some transactional documents including a California Motor Vehicle Contract Form.  Ultimately, the Car was transferred to a restoration shop in California for repairs, where it remains today.  (Elias First Cert. at ¶ 36).

On July 8, 2013, Plaintiff filed the one-count Complaint in this Court seeking to impose liability on Defendants, alleging fraudulent representations.  (See Compl. at ¶ 16).  On October 29, 2013, Defendants filed a joint motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, requesting a transfer of venue.  (Dkt. No. 6).

## II. PERSONAL JURISDICTION

The Federal Rules of Civil Procedure provide that a district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under state law. FED. R. CIV. P. 4(k)(1). A district court exercising diversity jurisdiction over a case must look to the forum state's long-arm statute in analyzing whether there is personal jurisdiction over a non-resident defendant. Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993). New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). The Fourteenth Amendment's Due Process Clause requires that "individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Consistent with the Due Process Clause, a court may assert personal jurisdiction so long as the defendant has "certain minimum contacts" with the forum, in this case New Jersey, such as not to "offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457 (1940)).

On a motion under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish jurisdiction. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) ("Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction."); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). A court must accept as true the allegations in the complaint and resolve disputed

issues of fact in favor of the plaintiff. <u>Carteret</u>, 954 F.2d at 142 n.1.  However, the plaintiff cannot rely on the pleadings alone and must provide actual proofs. <u>Time Share Vacation Club v. Atl. Resorts, Ltd.</u>, 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable. <u>Mellon Bank PSFS v. Farino</u>, 960 F.2d 1217, 1226 (3d Cir. 1992).

A court can assert either specific or general jurisdiction over a defendant. <u>Spuglio v. Cabaret Lounge</u>, 344 F. App'x 724, 725 (3d Cir. 2009).  Specific jurisdiction requires the defendant have minimum contacts with the forum state. <u>Burger King</u>, 471 U.S. at 472-74.  In addition, the lawsuit must "arise out of" or "relate to" these minimum contacts. <u>Id.</u>  Furthermore, the defendant must have purposefully availed itself of the forum such that it "should reasonably anticipate being haled into court" there, having invoked the benefits and protections of the forum's laws. <u>Id.</u> at 474-75.  The Third Circuit has summarized this analysis in three parts: (i) "the defendant must have 'purposefully directed [its] activities' at the forum"; (ii) "the litigation must 'arise out of or relate to' at least one of those activities"; and (iii) "if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" <u>D'Jamoos</u>, 566 F.3d at 102.

In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation." <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 775 (1984).  "Physical entrance [into the forum] is not required." <u>O'Connor v. Sandy Lane Hotel Co.</u>, 496 F.3d 312, 317 (3d Cir. 2007).  However, there must be at least "a single deliberate contact" with the forum state that relates to the cause of action. <u>Goodman v. Goodman</u>, No. 04–03869, 2009 WL 3756848, at *4 (D.N.J. Nov. 5, 2009) (citing

4

United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J.1988).

General jurisdiction, by contrast, requires the defendant to have "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). These contacts need not relate to the subject matter of the litigation. Id. at 415 n.10. However, general jurisdiction requires "a very high threshold of business activity." Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 891 n.2 (3d Cir. 1981) (finding that a "daily presence" in the forum and activities such as weekly advertising, regular solicitation of business, substantial product sales, and the maintenance of a telephone number in the forum meet the threshold); see also Early Learning Res., LLC v. Sebel Furniture Ltd., No. 10-6335, 2011 U.S. Dist. LEXIS 112483 (D.N.J. Sept. 30, 2011). The facts required to establish sufficient contacts for general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (citation omitted). In other words, the plaintiff must demonstrate "significantly more than minimum contacts." Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Recently, the Supreme Court refined the standard for finding general jurisdiction in Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014). According to Daimler, general jurisdiction refers to a court's power to "hear any and all claims" against an out-of-state entity or person when its "affiliations with the State are so continuous and systematic as to render [it] at home in the forum state." Id. (internal quotation marks and citation omitted); see also JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc., No. 13-4110, 2014 U.S. Dist. LEXIS 68293 (D.N.J. May 19, 2014).

### III. ANALYSIS

#### A. Specific Jurisdiction

In support of their motion to dismiss, Defendants contend that virtually all events related to the transaction in question occurred in California – the Car was located in Defendant's California dealership, Plaintiff wired the money to California, all the transactional documents were executed in California, Plaintiff travelled to California to see the Car, and arrangements were made to transfer the Car to a repair shop in California. The sole basis for jurisdiction is Plaintiff's claim that Elias contacted him via e-mail/phone with an offer to purchase the Car and provided photographs of the vehicle to him via the internet in New Jersey. This Court is satisfied that such contacts are insufficient to confer specific jurisdiction over Defendants in New Jersey.

"[W]hen the plaintiff can proffer evidence of a defendant deliberately directing mail, telephone, and/or email communications to the forum state," then a finding of personal jurisdiction may be proper. Carrabba v. Morgat, No. 2:12-6342, 2014 U.S. Dist. LEXIS 7799, at *13 (D.N.J. Jan. 17, 2014) (internal citation omitted); Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction"). However, "[t]he Third Circuit has held that telephone communications or mail sent by a defendant does not trigger personal jurisdiction if they 'do not show purposeful availment.'" Barrett v. Catacombs Press, 44 F. Supp. 2d at 729 (quoting Mellon Bank (East) PSFS, N.A. v.

6

Diveronica Bros., Inc., 983 F.2d 551, 556 (3d Cir. 1993)).  The Barrett Court found that the exchange of three emails between the plaintiff and defendant regarding the contents of the defendant's website, without more, did not "amount to the level of purposeful targeting required under the minimum contacts analysis." Id.

Email and telephone contacts may, in conjunction with other contacts, support the exercise of personal jurisdiction, but they are alone insufficient to satisfy due process. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003) (citing Barrett, 44 F. Supp 2d at 729); accord Vetrotex Certainteed Corp. v. Consol Fiber Glass Prods. Co., 75 F.3d 147, 152 (3d Cir. 1996) (holding that defendant's several informational telephone calls and letters to Pennsylvania do not support assertion of personal jurisdiction).  This Court has explained that minimal email correspondence, "by itself or even in conjunction with a single purchase, does not constitute sufficient minimum contacts." Machulsky v. Hall, 210 F. Supp. 2d 531, 542 (D.N.J. 2002).  See also Rychel v. Yates, No. 09-1514, 2011 U.S. Dist. LEXIS 38824, at *16 (W.D. Pa. Apr. 11, 2011) ("[A]greement-related telephone and email correspondence between Plaintiff and Defendant are insufficient to support an exercise of specific personal jurisdiction over Plaintiff's breach of contract claim"); cf. InfoMC, Inc. v. Comprehensive Behavioral Care, Inc., No. 10-4907, 2012 U.S. Dist. LEXIS 44721, at *8 (E.D. Pa. Mar. 30, 2012) (finding purposeful availment where the parties exchanged 1,580 pages of emails).

Here, accepting all of Plaintiff's allegations as true, Defendants have no connection to New Jersey other than initial limited phone and internet communications with Plaintiff.  The Court finds that these contacts are insufficient to confer specific jurisdiction over the Defendants.

A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not "automatically establish sufficient minimum contacts in the other party's home forum . . . ." Burger King, 471 U.S. at 478. "[C]ontract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum." Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993). Yet Plaintiff alleges that he never received a bill of sale and that he obtained title to the Car during a June 2011 trip to California, when he signed a California Motor Vehicle contract form. (Compl. at ¶ 13; Corigliano Cert. at ¶ 12). Defendants explain that Corigliano "signed the bill of sale with full disclosures and received the title" while in California; that the sale "was consummated in the State of California"; that "the transaction was subject to California law"; and that "all facts relevant to that contract relate to the State of California." (Elias First Cert. at ¶¶ 32, 43). At minimum, both parties agree that no operative documents whatsoever were sent to or executed in New Jersey. In addition, it is undisputed that Corigliano made at least one trip to California in part to move forward the transaction and that Defendants never travelled to New Jersey. (Corigliano Cert. at ¶¶ 6, 12; Elias First Cert. at ¶ 1; See also Certification of Fadi Elias ("Elias Second Cert."), at ¶¶ 12-19 and accompanying certifications). This Court is satisfied that, based on the evidence before the Court and accepting all of Plaintiff's allegations as true, the Defendants cannot be subject to specific jurisdiction in New Jersey for this transaction.

### B. General Jurisdiction

General jurisdiction over Defendants presupposes continuous and systematic contacts that rise to "a very high threshold of business activity" with New Jersey. Ameripay, LLC v.

8

Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (citation omitted).  In assessing general jurisdiction, the Court asks whether an out-of-state entity or person's "affiliations with the State are so continuous and systematic as to render [it] at home in the forum state."  Daimler AG v. Bauman, 134 S. Ct. at 751.  Plaintiff argues that by advertising on websites and in national magazines, Classic Motor specifically intended to reach customers in New Jersey and should be subject to jurisdiction here.  (Corigliano Cert., at ¶ 3).  Although not by way of sworn affidavit, Plaintiff contends that the following advertisements are enough to constitute jurisdiction in New Jersey over Classic Motor:  (1) the Classic Motor, Inc., website and inventory page; (2) the cover page from the November 2013 issue of the Dupont Registry; (3) the March/April 2012 cover page from the Flying Lady, a national club for collectors; (4) reproduction of the Yahoo website page showing cars offered for sale by Classic Motors; (5) a reproduction of the Dupont Registry website with cars offered for sale by Classic Motor; and (6) an internet search page for Google, showing advertisements by Classic Motors on Facebook, Yelp, and Hemmings Motor News.  (Opp. Br. at 1 and attached Exhibits).  Plaintiff claims that he located the Defendants and purchased the Car due to their "internet advertising," which subjects Defendants to jurisdiction in New Jersey.  This Court disagrees.

As for advertisements in the newspapers and magazine, "it has been clearly held by this Circuit that advertising in national or international newspapers or magazines does not constitute 'continuous and substantial' contacts with the forum state."  Decker v. Circus Circus Hotel, 49 F. Supp. 2d 743, 749 (D.N.J. 1999) (citing Reliance Steel Prods. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982)); see also Dluhos v. Strasberg, No. 00-3163, 2005 U.S. Dist. LEXIS 34385, *19-20 (D.N.J. June 23, 2005) (citation omitted) (noting that the Third

9

Circuit has rejected the notion that advertising in national newspapers, such as the New York Times and the Wall Street Journal, constituted contacts with a given forum state sufficient to support the assertion of general jurisdiction). Accordingly, Defendants advertisements in the national magazines cannot constitute continuous and substantial contacts with New Jersey.

For the Internet advertising, in Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003), the Third Circuit discussed Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), which has become a seminal authority regarding personal jurisdiction based on the operation of an Internet website. The Third Circuit explained that:

> The court in Zippo stressed that the propriety of exercising jurisdiction depends on where on a sliding scale of commercial interactivity the web site falls. In cases where the defendant is clearly doing business through its web site in the forum state, and where the claim relates to or arises out of use of the web site, the Zippo court held that personal jurisdiction exists. Id. at 1124. . . . Since Zippo, several district court decisions from this Circuit have made explicit the requirement that the defendant intentionally interact with the forum state via the web site in order to show purposeful availment and, in turn, justify the exercise of specific personal jurisdiction. See, e.g., S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc., 79 F. Supp. 2d 537, 540 (E.D. Pa. 1999) (observing that "a web site targeted at a particular jurisdiction is likely to give rise to personal jurisdiction."). As another district court in this Circuit put it, "courts have repeatedly recognized that there must be 'something more' . . . to demonstrate that the defendant directed its activity towards the forum state." Desktop Technologies, Inc. v. Colorworks Reprod. & Design, 1999 U.S. Dist. LEXIS 1934, at *5 (E.D. Pa. Feb. 25, 1999) (citation omitted)

Id. Thus, a passive website that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. Spuglio v. Cabaret Lounge, 344 F. App'x 724, 726 (3d Cir. 2009) (quoting Zippo, 952 F. Supp. at 1124); see also Ispec, Inc. v. Tex R.L. Indus. Co., No. 12-4339, 2013 U.S. Dist. LEXIS 139138 (D.N.J. Sept. 27,

2013); Remick v. Manfredy, 238 F.3d 248, 259 n.3 (3d Cir. 2001) ("[T]he mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction."). Thus, national advertisements can support jurisdiction if targeted specifically at New Jersey consumers, or any other geographic group. Colvin v. Van Wormer Resorts, Inc., 2008 U.S. Dist. LEXIS 102147, 7-8 (D.N.J. Dec. 12, 2008) (citing Partesi v. Carvnival Cruise Lines, Inc., Civ. No. 90-275, 1991 A.M.C. 1401, 1990 WL 302890, at *1 (D.N.J. Nov. 26, 1990) (declining to find jurisdiction based on advertisements that did "not target[] specifically at New Jersey consumers (or any other geographic group) . . . .")).

None of the exhibits cited by Plaintiff regarding Internet advertising provide support that Defendant specifically targeted New Jersey consumers. First, the Classic Motor website/inventory page and the other Internet sites are purely informational. Classic Motor's main website lists a local California phone number to call for further information and a California address in the header. (Opp. Br., Ex. 1). The other postings and search results that Plaintiff provides include Classic Motor's California address and national phone number for consumers to initiate contact. (Opp. Br., Exs. 4-6). The websites are "not equipped to take credit cards or payment in any way." (Elias Second Cert. at ¶ 23). There is absolutely no evidence proffered by Plaintiff to suggest that Classic Motor solicited New Jersey residents specifically or otherwise utilized New Jersey-targeted media. Even the Plaintiff admits that the Defendants' advertising targeted "New Jersey and other states" (emphasis added) (Corigliano Cert. at Concl.). Such open-ended activities do not meet the heavy burden of proving specific intent on the part of Defendants to target New Jersey consumers. At best, Defendants' advertisements were sporadic, minimal and not directed to any state in particular.

11

Moreover, the evidence is overwhelming that Defendants had no other contact with New Jersey. Elias has never been to New Jersey and is a resident of California. (Elias First Cert. at ¶¶ 1, 4). Classic Motor is licensed in California and its place of business is located in California. (Elias First Cert. at 4). Neither does business in, is authorized to do business in, is located in, or resides in New Jersey; has employees, servants, agents of process, bank accounts, contracts, real estate, or property in New Jersey; pays taxes in New Jersey; advertises, solicits business, or conducts marketing activities directed to the citizens of New Jersey; or operates out of New Jersey. (Id. at ¶ 6-22). Accordingly, this Court is satisfied that Defendants do not possess the requisite systematic nor continuous contacts with New Jersey to allow for the exercise of general jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction (Dkt. No. 6) is **GRANTED**.[1]

                                             **s/SUSAN D. WIGENTON, U.S.D.J.**

**Date: July 17, 2014**

cc:          Hon. Madeline Cox Arleo, U.S.M.J.
             Clerk
             All Parties
             File

---

[1] Because the Court is granting Defendants' Motion to Dismiss, it does not need to address the question of whether transfer is appropriate or not.